UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

___

SIDNEY LOUIS CALHOUN,

      Plaintiff,

  -v-                                        11-CV-0567Sr
                                              ORDER

COMMISSIONER BRIAN FISCHER,
SUPERINTENDENT DOWNSTATE,
SUPERINTENDENT COXSACKIE,
SUPERINTENDENT CLINTON,
SUPERINTENDENT AUBURN,
SUPERINTENDENT ELMIRA,
SUPERINTENDENT SOUTHPORT,

      Defendants.

___



## INTRODUCTION

Plaintiff, Sidney Louis Calhoun, currently an inmate of the Sing Sing Correctional Facility but who was an inmate of the Elmira Correctional Facility at the time he commenced this action, filed a complaint alleging that the Time Allowance Committee had denied him a release date of June 6, 2011, even though he had served two-thirds of his three to six year sentence and that Brian Fischer, Commissioner, New York State Department of Corrections and Community Supervision ("DOCCS"), had advised him in a letter that he would need to serve the entire six years. Plaintiff also alleged that he was attacked by another inmate on June 20, 2011, and that DOCCS and the "Warden" of Elmira were responsible for the attack. Plaintiff sought his immediate release and damages. (Docket No. 1, Complaint.)

The Court (Hon. Charles J. Siragusa) granted plaintiff permission to proceed *in forma pauperis* and, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), dismissed plaintiff's claims related to the denial of early release, *see Preiser v. Rodriquez*, 411 U.S. 475, 500 (1973); *Heck v. Humphrey*, 512 U.S. 477 (1994), and directed plaintiff to file an amended complaint with respect to the claim related to the attack at Elmira on June 20, 2011. Plaintiff had (or appeared to have) sued DOCCS and the Warden (Superintendent) of Elmira on the claim related to the attack and the Court found that DOCCS was entitled to immunity under the Eleventh Amendment to the United States Constitution and that the Superintendent could not be liable under 42 U.S.C. § 1983 based solely on his role as a Superintendent. *See Monell v. New York City Department of Social Services*, 436 U.S. 658, 691-95 (1978); *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995). Plaintiff was advised that, to the extent he filed an amended complaint against the Superintendent of Elmira or any other correctional employee, he had to allege that said defendants were personally involved in the alleged constitutional violation--*i.e.*, a failure to protect plaintiff from the attack on June 20, 2011--and that said defendants knew of a "substantial risk of serious harm" to plaintiff and acted "with deliberate indifference" to plaintiff's safety. (Docket No. 3, Decision and Order, at 5-7) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Plaintiff filed an amended complaint against Commissioner Fischer and the unnamed Superintendents of the Downstate, Coxsackie, Clinton, Auburn, Elmira and Southport Correctional Facilities. He alleges that the Downstate Correctional Facility did not follow a court order "to place [him] away (isolate) [him] for a possible threat to [his]

life[,]" and that on May 27, 2010, he was attacked and placed in protective custody. (Docket No. 4, Amended Complaint, Section 5A, First Claim, at 5.) He then alleges that when he was transferred to the Arthur Kill Correctional Facility on or about June 12, 2010, he was placed in general population but when he refused to be placed in general population he was transferred to the Coxsackie Correctional Facility on or about July 1, 2012, where he was placed in long term keep-lock status.

He was then transferred to the Marcy Correctional Facility, Regional Mental Health Unit, in or around August 2010, and then transferred to the Clinton Correctional Facility in or around September or October 2010, where he was placed in long term keep-lock. Plaintiff claims he wrote to Clinton's Superintendent advising him that once his release date arrived, he would request to be placed in protective custody. He was released from long term keep-lock on December 25, 2010, but his request to be placed in protective custody was ignored and he was placed in general population. Four days later he was cut on his nose and left arm in the North Yard. He was then placed in protective custody in January 2011, and was prepared to go before the Time Allowance Committee (TAC) but was transferred to the Auburn Correctional Facility. He interviewed with a Captain at Auburn and requested protective custody "instantly." He claims that because the "process" would take too long and he feared being placed in general population, he broke a cassette player case and was found with a weapon in his shoe. He was thus taken to the Special Housing Unit (SHU).

He was then transferred to Southport Correctional Facility, an all SHU facility, in April 2011 and was transferred again after serving only 60 days at Southport due to a reversal of one of the Superintendent's Hearings. He was transferred to the Elmira

3

Correctional Facility, after just going to TAC, where he was advised that he did not complete the required programs--*viz.*, ART--aggressor management; and ASAT--Alcohol and Substance Abuse. He claims he could not complete the programs because he was in protective custody or SHU most of the time. Thus, when he arrived at Elmira he had "just missed [his] release date of June 6, 2011," and he believed that if he could stay in general population he might be able to complete the programs, as TAC had instructed, and obtain early release. However, "this wasn't meant to be" and he was cut in the face while coming from the Yard and received 20 stitches. The inmate who cut him was found with a weapon and he believes ("hold[s]") Fischer and each of the Superintendents at each facility to which he was transferred are responsible for failing to protect him from this assault. He also notes that they could have released him on June 6, 2011, and he was cut just two weeks later.

## DISCUSSION

Plaintiff has been granted permission to proceed *in forma pauperis*. See 28 U.S.C. § 1915(a). Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if the Court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. In addition, 28 U.S.C. § 1915A(a) requires the Court to conduct an initial screening of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.*, regardless of whether or not the inmate has sought *in forma pauperis* status under 28 U.S.C. § 1915. As noted, the Court directed

plaintiff to file an amended complaint against those individuals who he claims were personally involved in the alleged failure to protect him from the attack at Elmira on or about June 20, 2011. The amended complaint names the DOCCS Commissioner and the Superintendents at six of the Correctional Facilities at which plaintiff was incarcerated in 2010 and 2011. He appears to allege that each of the seven defendants are responsible for the attack at Elmira because while he was at the various correctional facilities he was not placed in protective custody as requested and a court order directed. While at least two other incidents are alleged where plaintiff claims to have been assaulted, he appears to be alleging only that the defendants failed to protect him in relation to the assault at Elmira on June 20, 2011, and, because this is the claim alleged in the original complaint and the claim plaintiff was granted leave to amend, this is how the amended complaint will be construed.[1]

The amended complaint is by no means a model of clarity but, as construed liberally, appears to allege that each of the defendants failed to protect plaintiff from the inmate attack at Elmira on June 20, 2011, in violation of the Eighth Amendment. See Triestman v. Fed.Bur. of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (court must liberally construe pro se complaint to "raise the strongest arguments that it suggests.") (citation, internal quotation marks and emphasis omitted). As noted, the original complaint was dismissed against the unidentified Superintendent (Warden) of Elmira--who while not

---

[1] The Court notes that if plaintiff is also alleging a failure to protect in relation to the two other incidents—one at Downstate on or about May 27, 2010, and one at Clinton on or about December 29, 2010, he may wish to file complaints in the United States District Court, Northern District of New York arising from these two other assaults. See 28 U.S.C. § 1391(b)(2); 1404(a). Plaintiff is reminded that the statute of limitations for a claim under 42 U.S.C. § 1983 is three years from the date of the alleged unconstitutional conduct. Owens v. Okure, 488 U.S. 235, 251 (1989); Jewell v. County of Nassau, 917 F.2d 738, 740 (2d Cir. 1990).

named specifically as a defendant was referred to in the body of the complaint itself–for its failure to allege personal involvement on the part of the Superintendent of Elmira. (Docket No. 3, Decision and Order, at 5-6) (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)).

It is axiomatic that plaintiff may not rely on the doctrine of respondeat superior to establish liability against the Commissioner and Superintendents sued herein. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691-95 (1978). Instead, a showing of some personal involvement on the part of the supervisory official is required, *Sealey*, 116 F.3d at 51, or that the supervisory official, failed to remedy the alleged wrong after learning of it, or created a policy or custom under which unconstitutional practices occurred, or was grossly negligent in managing subordinates. *Wright v. Smith*, 21 F.3d 469, 501 (2d Cir. 1994); *see also Colon v. Couglin*, 58 F.3d 865, 873 (2d Cir. 1995) (grafting on to the *Wright* holding a fifth manner in which to establish the personal involvement of a supervisory official: "defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.") (citation omitted).

Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)) (internal quotation marks and other citations omitted). In order to establish an Eighth Amendment violation in this context, a prisoner must show that: (1) he is incarcerated under conditions "posing a substantial risk of serious harm;" and (2) prison officials acted

named specifically as a defendant was referred to in the body of the complaint itself–for its failure to allege personal involvement on the part of the Superintendent of Elmira. (Docket No. 3, Decision and Order, at 5-6) (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)).

It is axiomatic that plaintiff may not rely on the doctrine of respondeat superior to establish liability against the Commissioner and Superintendents sued herein. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691-95 (1978). Instead, a showing of some personal involvement on the part of the supervisory official is required, *Sealey*, 116 F.3d at 51, or that the supervisory official, failed to remedy the alleged wrong after learning of it, or created a policy or custom under which unconstitutional practices occurred, or was grossly negligent in managing subordinates. *Wright v. Smith*, 21 F.3d 469, 501 (2d Cir. 1994); *see also Colon v. Couglin*, 58 F.3d 865, 873 (2d Cir. 1995) (grafting on to the *Wright* holding a fifth manner in which to establish the personal involvement of a supervisory official: "defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.") (citation omitted).

Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)) (internal quotation marks and other citations omitted). In order to establish an Eighth Amendment violation in this context, a prisoner must show that: (1) he is incarcerated under conditions "posing a substantial risk of serious harm;" and (2) prison officials acted

with "deliberate indifference" to his safety. *Farmer*, 511 U.S. at 834; *see also Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996). A plaintiff can establish deliberate indifference by showing that a prison official "knows of and disregards an excessive risk to inmate safety; the official must both be aware of the facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[A] prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial serious risk of serious harm and disregards that risk by failing to take reasonable measures to abate the harm." *Hayes*, 84 F.3d at 620 (citation omitted).

Narrowing plaintiff's claims down to its core, he is alleging that the defendants failed to protect him from the assault at Elmira on June 20, 2011. With respect to Commissioner Fischer and, at least, the Superintendents of the Correctional Facilities[2] plaintiff was housed at prior to the incident at Elmira, the amended complaint does not allege sufficiently that these defendants were personally involved in the alleged Eighth Amendment violation at Elmira. Even assuming, as plaintiff alleges and the Court must,[3] that there was an order requiring plaintiff to be placed in protective custody within DOCCS, any failure to place him in protective custody at Elmira at or about the time of the assault at Elmira could not, in any way, be the failure of these defendants, let alone a failure at a level sufficient to state a claim under the Eighth Amendment and *Farmer, supra*.

---

[2]The Court does not find that plaintiff has alleged sufficiently the personal involvement of the Superintendent at Elmira.

[3]In light of the procedural posture of this case, initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the recitation of facts set forth above is drawn exclusively from plaintiff's amended complaint, the contents of which must be accepted as true for purposes of this review. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

As to the unidentified Superintendent of Elmira at the time of the assault, there are simply no allegations of fact that he knew that plaintiff was subject to a risk of harm at the hands of other inmates and failed to take any reasonable measures to protect plaintiff from said risk of harm. While plaintiff alleges that he was or may have been assaulted over a two year period at two other facilities, there are no allegations that the Superintendent of Elmira was aware of these prior incidents and disregarded them. In other words, there are no allegations that the Superintendent was deliberately indifferent to a known risk of serious harm to plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (In order state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ") (citation omitted).

While the Court is wholly cognizant that plaintiff's pleadings are submitted *pro se*, the Court nonetheless finds that after two attempts to state a claim under the Eighth Amendment for a failure to protect plaintiff from an assault at Elmira, he has failed to allege an actionable claim against the defendants.

## **CONCLUSION**

For the reasons discussed above, the amended complaint is dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A. Plaintiff is forewarned that his right to pursue further relief in federal court at public expense will be greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. *See* 28 U.S.C. § 1915(g).

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals

as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

### ORDER

IT HEREBY IS ORDERED, that the amended complaint is dismissed with prejudice; and

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied.

SO ORDERED.

_____
JOHN T. CURTIN
United States District Judge

DATED: 10/3, 2012
Buffalo, New York